Case 36.—ACTION BY S. H. DEES, GUARDIAN OF GRAY A. GATLIN AND ANOTHER, AGAINST PROVIDENCE SAVINGS LIFE ASSURANCE CO., ON POLICY OF INSURANCE.—April 12.

## Provident Savings Life Assurance Co. v. Dees.

Appeal from Calloway Circuit Court.

THOS. P. COOK, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

Life Insurance — Beneficiary Named — Additional Beneficiary Added — Notice to Company — Effect — Trial — Instructions— Use of Intoxicants by Insured.

1. Life Insurance—Beneficiary Named—Additional Beneficiary Subsequently Added—Notice to Company—Effect—A life policy was issued by appellant for $10,000 on the life of W. P. Gatlin, in which insured's daughter, Gray A. Gatlin, was named as beneficiary. When the policy was produced after the death of insured it contained the additional name of Geo. O. Gatlin, a son of insured, as one of the beneficiaries, which latter name there was evidence tending to show was in the handwriting of the insured. Both the son and daughter were infants, and by their guardian brought this suit on the policy. The company pleaded the alteration in bar of the action. Held—If the application was in fact accepted by the company, and the policy issued with Gray A. Gatlin as the sole beneficiary, her rights then became fixed, and neither the insured nor the company could affect her rights except as provided in the policy, which provided that the insured might change the beneficiary with the consent of the company.

2. Trial—Instructions to Jury—On the trial of the action the court should have told the jury that they should find for the plaintiff, Gray A. Gatlin, alone, if the alteration of the contract was made by the insured after the policy was delivered and accepted, and without the consent of the company, but that they should find in favor of both the plaintiffs if the alteration was made before the delivery and acceptance of the policy, or with the consent of the company.

3. Use of Intoxicants by Insured—False Statements in Applica-
. tion—Where it is pleaded that insured had made false state-
ments in his application for insurance as to his habits as to
drinking whiskey, the court should have set out in an in-
struction the questions and answers contained in the appli-
cation in reference thereto, and should have told the jury
that they should find for the plaintiffs if the answers were
substantially true, but otherwise they should find for de-
fendant, although there was no intention to mislead or de-
ceive the company, and that the answers were not substan-
tially true if the assured drank materially more than as
stated.

FRANK P. POSTON and REED & BERRY for appellant.

### SYNOPSIS OF BRIEF AND ARGUMENT.

We will not undertake in this brief to discuss, in the order stated
and separately, the various grounds given in the motion for a new
trial, as it will be more convenient to group the errors assigned
where it can be done, and discuss them together.

1. The court erred in refusing to give to the jury, at defendant's
request, special instruction marked "F," as follows: "The court
instructs the jury that if they shall believe from the evidence in
this case that W. P. Gatlin, deceased, made an application to
defendant for the issue of the policy sued on to him and that in
said application he was asked the following questions: 'Have you
ever used spirits, wine or malt liquors?' to which he answered
'Yes;' and the further question, 'Have you ever used them to
excess?' to which he answered 'No;' and the further question, 'Do
you now use them? If so, state definitely what is the form, how
much and how often, i. e., what is your practice?' To which he
answered, 'Yes, whiskey; three drinks a month;' and you further
believe that any answer to either of the questions so propounded
to him was untrue or false, and that such answer was as to facts
which were material to the risk to be assumed by the defendant,
then said untrue answer or answers void the policy sued on, and
if the jury so believes, then the law is for defendant, and the jury
will so find."

2. The court erred in giving instruction No. 1 to the jury, which
is as follows: "The court instructs the jury that if they believe
from the evidence that on the 28th day of August, 1899, W. P.
Gatlin made application to the defendant company for the policy
in suit in this action, and that said application and the answers
therein to the question, 'Have you ever used spirits, wine or malt
liquors?' second, 'Have you ever used them to excess?' and, third,
'Do you now use them? If so state definitely what is the form, how

much and how often, that is, what is your practice,' were honestly made, without any intention to deceive or defraud defendant, and that said answers were substantially true, then the law is for the plaintiff, and the jury will so find for him the amount of the policy, with 6 per cent. interest from June 16, 1901, unless the jury shall further believe from the evidence that said policy after execution and delivered to W. P. Gatlin was changed or altered as set out in instruction No. 2.

3. The court erred in giving to the jury instruction No. 3, viz: "The court further says to the jury that if they believe, from the evidence in this case, that W. P. Gatlin, deceased, made application to defendant company for the policy sued on herein, and that in said application he was asked the questions, 'Have you ever used wine, spirits or malt liquors?' to which he answered 'Yes,' and the further question, 'Have you ever used them to excess?' to which he answered 'No;' and the further question, 'Do you now use them? If so state definitely what is the form, how much and how often, i. e., what is your practice?' to which he answered 'Yes, whiskey, three drinks a month;' and that if either or any of said answers to said questions were in fact untrue, and were made with the fraudulent intent to deceive or mislead defendant, and with intent that defendant should rely, and it did rely, on said answers in issuing the policy sued on, then the law is for the defendant, and the jury will so find."

If possible this instruction contains more vital error than instruction No. 1, which, as far as it goes, was a correct statement of the law. Its error being that it failed to say what the legal effect would be if the answers were in fact untrue, and to supplement which instruction "F" was asked by defendant.

4. The court erred in refusing to give special instruction "G," as follows: "The court instructs the jury, if they shall believe from the evidence in this case, that said W. P. Gatlin, deceased, made an application to defendant for the issuance of the policy sued on herein to him, and that in said application he was asked the following questions: 'Have you ever used spirits, wine or malt liquors?' to which he answered 'Yes,' and the further question, 'Have you ever used them to excess?' to which he answered 'No;' and the further question, 'Do you now use them?' If so, state definitely what is the form, how much and how often, i. e., what is your practice?' to which he answered, 'Yes, whiskey, three drinks a month;' and you further believe that the answer or answers to either or any of the questions propounded to him were untrue, and were as to matters material to the risk to be assumed by the defendant and that defendant relied on these answers in issuing the policy, although the jury may believe that said untrue answer or answers were not made with any fraudulent purpose, or with intent to deceive the

defendant, then the law is for defendant, and the jury will so find."

5. The court erred in refusing to give special instruction marked "H," asked by defendant, viz: "The court instructs the jury that if they shall believe, from the evidence in this case, that W. P. Gatlin made an application to the defendant for the issue of the policy sued on, and that in said application he was asked the following questions (questions and answers quoted in previous charges), and that if either of said answers to said questions were in fact untrue, and were fraudulently made, or were made with the intent to deceive or mislead defendant, and that defendant relied upon said answers in issuing said policy, then the law is for defendant, and the jury will so find, even though the jury may believe, from the evidence, that such untrue answers were not material to the risk."

6. If the common law does not prevail in Kentucky and the validity of the policy does not depend upon the absolute truthfulness of the statements made in the application, and the statute of 1874 changes it, then the fair construction of this statute is, that if an untrue answer was given by the applicant for the policy sued on in this case, such answer, if made with a fraudulent purpose, or with an actual intent to deceive, renders the policy void regardless of the question whether the fact so misstated was material of immaterial. (Kern on Insurance, sec. 140; 16 Am. & Eng. Ency. of Law, 921; 3 Kent's Com., 283; Carrollton Furn. Co. v. Am. Credit Co., 115 Fed., Rep., 77; 2 Joyce on Insurance, sec. 1896.)

If, however, the answer to said question was made in good faith, and without any intent to deceive, but was a misstatement as to a fact which increased the risk, or was material to the risk, then the policy is void, regardless of the intention of the party in making the untrue statement, although it may have been made in good faith, or in ignorance of the fact, misstated. (Germania Ins. Co. v. Rudwig, 80 Ky., 223; Carrollton Furn. Co. v. Am. Credit Co., 115 Fed. Rep., 77; 16 Am. & Eng. Ency. of Law, 933; Ferr on Insurance, 343; 1 May on Insurance, sec. 181.)

7. The Kentucky Statute is as follows: "All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties, nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy." (Ky. Stats., sec. 639.)

8. The court erred in refusing to give special instruction "E," asked by defendant, as follows: "The court instructs the jury that if they shall believe from the evidence in this case that the policy sued on when issued and delivered to W. P. Gatlin made the loss thereunder payable to Gray A. Gatlin, daughter, or her representatives, and that after delivery to Wm. P. Gatlin he altered or

changed the same by inserting after the words 'Gray A. Gatlin, daughter' the words, 'and George O. Gatlin, son,' and changed the word 'her' to 'their,' so as to make the loss payable to Gray A. Gatlin, daughter, and George O. Gatlin, son, or their representatives, and that this alteration was made without the knowledge or consent of the defendant, then George O. Gatlin has no interest in or title to said policy, and can not maintain this suit jointly with Gray A. Gatlin, and the jury will find for defendant."

HENDRICK & MILLER for appellee.

### STATEMENTS OF POINTS DISCUSSED.

1. (a) Section 639 of Kentucky Statutes, as follows: "All statements or descriptions in any application for a policy or insurance shall be deemed and held representations and not warranties; nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy"—applies to all contracts of insurance, "and the parties must be considered to have contracted with reference to this contract." (Imperial Fire Ins. Co. v. Kiernan, 83 Ky., 468; Germania Ins. Co. v. Rudwig, 80 Ky., 223; Ky. Mut. Ins. Co. v. Harrison, 7 Ky. L. Rep., 43; Kenton Ins. Co. v. Wigginton, 89 Ky., 330; Mut. Life Ins. Co of New York v. Thompson, 94 Ky., 253; Lancaster Ins. Co. v. Monroe, Jefferson & Co., 19 Ky. Law Rep., 204; Sun Mut. Ins. Co. v. Crist, 19 Ky. Law Rep., 305; Continental Ins. Co. of New York v. Ware, 3 Ky. Law Rep., 621; Orient Ins. Co. v. Burus, 23 Ky. Law Rep., 656.)

(b) Notwithstanding these representations were made a part of the contract, the statute still applies, and the contract is governed by the same rule as if they had been made merely to induce a contract; and the case of Farmers & Drovers Insurance Company v. Curry, 13 Bush, 312, holding to the contrary, was expressly overruled by the case of Germania Insurance Company v. Rudwig, 80 Ky., 223.

2. There was an absolute failure of proof to show that the health of insured had been impaired by habits of intemperance prior to the time of the application for insurance, or that he did then or at any previous time use intoxicants to excess, and "an inquiry in regard to previous habits of drinking intoxicating liquors is not material, unless they existed to such an extent as to affect the health or physical condition of the applicant, and thereby render him an unsatisfactory subject for life insurance." (Mut. Life Ins. Co. of New York v. Thompson, 94 Ky., 253; Knickerbocker L. Ins. Co. v. Foley, 105 U. S., 350, [26 L. Ed., 1055]; Am. & Eng. Enc., vol. 2, p. 296, 1st Ed.)

3. (a) As there was no evidence of any misrepresentation as to any material fact, the court could do no more for defendant

than to give the instructions regarding fraudulent misrepresentations as to immaterial facts.

(b) But even these instructions were more favorable to appellant than it could ask, because, under the rule laid down in Mut. Life Ins. Co. of New York v. Thompson, 94 Ky., 253, Knickerbocker L. Ins. Co. v. Foley, 105 U. S., 350 (26 L. Ed., 1055), and Am. & Eng. Enc. of Law, vol. 2, page 296 (old edition), there was no evidence of any breach of truth or promise that the law would notice; and there was not even a suggestion of a scintilla of evidence showing any fraudulent or improper motive in the mind of Gatlin when he made the answers that are complained of. In answering the question whether or not he had ever used intoxicants, he said, "Yes." As to whether or not he had ever used same to excess, he said, "No." (That referred to a habit of excess.) As to his then existing practice, he said, "Yes, whiskey, three drinks a month." These were the only answers here complained of. There is not only no evidence of fraudulent intention in these answers, but there is absolutely no evidence that they were even incorrect. These answers, according to Justice Fields, in the Knickerbocker L. Ins. Co. case, supra, and other authorities, refer to habits, and must be so taken.

(c) But in order to be fraudulent in law, a statement must be material, and known by the person making it to be false. (Black's Law Dictionary; 1 Story's Equity Jurisdiction, sec. 187; Phoenix Ins. Co. v. Coomes, 14 Ky. Law Rep., 603; Ball v. Lively, 4 Dana, 369; Campbell v. Hillman, 15 B. M., 517; Warren v. Baker, 2 Duvall, 155.)

Fraud can never be imputed where opinion, conclusion, and deduction constitute the essential ground for the imputation. (Fisher v. May, 2 Bibb, 450.)

(d) And, after all, the instructions really treated the statements of the applicant as warranties, and required the jury to believe from the evidence that these statements were true before they could find for plaintiff. The instructions told the jury to find for plaintiff if they believed from the evidence that these answers "were honestly made, without any intention to deceive or fraud defendant, and that said answers were substantially true," and to find for defendant if they believed from the evidence that "either or any of said answers to said questions were in fact untrue, and were made with the fraudulent intent to deceive," etc. The jury found for plaintiff, and thus found that said answers, whether material or immaterial, were true. Appellant can ask for no more.

4. (a) Alteration of a written contract will not invalidate the writing, unless it be in a material part and change the meaning and legal effect of the writing, the old rigid rule as to alternations

having been changed and distinctly modified. (Tranter v. Hibberd, 21 Ky. Law Rep., 1710; Duker v. Franz, 70 Ky., 275; Jones v. Shelbyville, etc., Ins. Co., 1 Met., 64; Phillips v. Breck, 79 Ky., 467; Thacker v. Booth, 9 Ky. Law Rep., 745; Woodworth v. Bank of America, 10 Am. Dec., 267, [note]; Mersman v. Werges, 112 U. S., 139, [28 L. Ed., 641].)

(b) A change in an insurance policy, in order to invalidate same, must be such as to increase the risk. (Pheonix Ins. Co. v. Mc-Kernan, 100 Ky., 97; Cyclopedia of Law and Procedure, vol. 2, p. 194; 1 Joyce on Insurance, secs. 265-266.)

The insertion of the words, "Geo. O. Gatlin, son," into the writing can not be held to have increased the risk. He was a son of ₊he insured, and the law presumes he was interested in prolonging the life of ₋₋s parent, or it would deny him an insurable interest in that life. (Bayes v. Adams, 81 Ky., 368; Throckmorton, &c., v. Nat. Mut. Ben. Ass'n, 4 Ky. Law Rep., 61; Warnock v. Davis [U. S. Supreme Ct.], 4 Ky. Law Rep., 67; Equitable Life Ins. Co. v. Haxelwood, 7 L. R. A., 217; 11 Am. & Eng. Enc. of Law [old Ed.], 319.)

·Change of beneficiary in ₗife insurance policy is not material, as in fire insurance, because in the former the beneficiary must be interested in preserving the thing insured, while in the latter the owner of the thing insured may be careless of it, or destroy it purposely. Naturally, a man and his children desire to preserve his life.

(c) Not a case has been found on record holding that such a change of the beneficiary in a life insurance policy rendered the policy void.

(d) An alteration by one not interested therein does not render the instrument void. (Lee v. Alexander, 9 B. M., 26; Lisle v. Rogers, 18 B. M., 539; Terry v. Haxelwood, 1 Duv., 109; Blakey v. Johnson, 13 Bush, 199; Lawson's Rights and Remedies, sec. 2470.)

It is not pretended that Gray A. Gatlin, who was first named as beneficiary, or her brother, Geo. O. Gatlin, whose name was alleged to have been added, had even any knowledge of such alteration.

(e) A special provision of the policy stipulated that a change of beneficiary might be made, and it is claimed merely that the change was not made in the particular manner prescribed. It is not even hinted that the company would have objected, or that it had any right to object to Geo. O. Gatlin as a beneficiary.

(f) And at last Geo. O. Gatlin was in a sense from the first a beneficiary of the policy, as it was to go to the estate of the in-sured in the event Gray A. Gatlin should die before her father; and this change merely made the interest of the son more direct.

· 5. Admitting the change was material, under the proof it was

properly submitted to the jury, and their verdict must stand as it was given, for plaintiff.

6. If it be admitted that the language of counsel for plaintiff was improper—which is denied—the court rebuked counsel and properly admonished the jury. Furthermore, counsel for defendant had the closing argument, and what was said could not· have changed the minds of the jury. The rebuke of the plaintiff's counsel by the court would cause what counsel said to benefit defendant rather than plaintiff; and as counsel for defendant had an opportunity in the closing argument to correct any erroneous statement and comment upon what occured, the incident was, upon the whole, advantageous to defendant.

OPINION BY CHIEF JUSTICE HOBSON.—Reversing.

On September 6, 1899, the Provident Savings Life Assurance Society of New York issued a policy on the life of William P. Gatlin, of Murray, Ky., for the sum of $10,000. In his application for the policy Gatlin stated the beneficiary was his daughter, Gray A. Gatlin, and the policy was so issued in New York and mailed to the agent of the company in Cincinnati. Gatlin paid the premiums on the policy until his death, on April 19, 1901, and when the policy was produced after his death it contained, in addition to the name of Gray A. Gatlin, the name of George O. Gatlin, his son, as one of the beneficiaries. When and by whom this change was made does not appear, except that there was evidence tending to show that the additional words were in the handwriting of the insured, William P. Gatlin. Both the son and the daughter were infants,. and brought suit by their guardian upon the policy. The company, among other things, pleaded the alteration of the policy in bar of the action. It also pleaded that Gatlin had made false statements in his application as to his habits as to drinking whiskey. The application contained, among other things, the following questions and answers:

"(7) Have you ever used spirits, wine or malt liquors?"

"Yes."

"(8) Have you ever used them in excess?"

"No."

"(9) Do you now use them? If so, state definitely what is the form, how much and how often—i. e. What is your practice? Don't say moderately, etc. Such answers will not be accepted (see No. 2 on back)."

"Yes; whiskey, three drinks a month."

The defendant introduced proof on the trial, which, while not conclusive, was sufficient to warrant the jury in concluding that the assured drank much more whiskey than stated. We do not mean to say that the evidence would have required the jury to so find, but only that there was evidence sufficient to submit the issue to the jury. The question is therefore presented whether the instructions of the court properly presented the matter to the jury. The court, by instruction 1, told the jury that if the answers of Gatlin above quoted were "honestly made, without any intention to deceive or defraud the defendant company, and that said answers were substantially true," then they should find for the plaintiff. He also told them, in instruction 3, that if either of the answers was "in fact untrue, and was made with the fraudulent intent to deceive or mislead defendant company, and with intent that defendant should rely, and it did rely, on said answers in issuing the policy," they should find for the defendant. The court also, by another instruction, directed the jury to find for the defendant if the policy had been altered by William P. Gatlin by the addition of the name of George O. Gatlin without the knowledge or consent of the company, although the alteration was made without any fraudulent intent

on the part of William P. Gatlin.　The jury found for the plaintiffs, and the defendant appeals.

As to the alteration of the policy, we think the instruction was more favorable to the defendant than it should have been.　If the application was in fact accepted by the company, and the policy issued with Gray A. Gatlin as the sole beneficiary, her rights then became fixed, and neither the insured nor the company could affect her rights, except as provided in the policy. It is true, it is provided in the policy that the insured might change the beneficiary with the consent of the company, but he could not effect this end in any way not provided by the contract.　If he had scratched out her name in the policy after it reached his hands, and inserted his own name, this would not have affected her rights.　She could have shown the mutilation and recovered upon the contract as it was before it was mutilated.　If, instead of scratching out her name, he let her name remain, and added another as a joint beneficiary in the policy, no greater effect can be given his wrongful act than if he had scratched out her name and inserted in lieu of it the name of her brother.　If the alteration was made before the policy was delivered or became effective, or with the consent of the company, a different question would be presented.　In lieu of the instruction which the court gave as to the alteration of the contract, the court should have told the jury that they should find in favor of the plaintiff, Gray A. Gatlin, alone, if the alteration of the contract was made by W. P. Gatlin after the policy was delivered and accepted, and without the consent of the company, but that they should find in favor of both the defendants if the alteration was made before the delivery and acceptance of the policy, or with the consent of the company.

The question of the correctness of the instructions

as to the statements made in the application turns on section 639, Ky. Stats., 1903: "All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy." While the court has had the statute before it in several cases, it has not construed it further than to hold that a misrepresentation will not avoid the policy unless fraudulent or material to the risk. (Germania Insurance Company v. Rudwig, 80 Ky., 231, 3 Ky. Law Rep., 712; Mutual Life Insurance Company v. Thomson, 94 Ky., 258, 14 Ky. Law Rep., 800, 22 S. W., 87; Lancashire Insurance Company v. Monroe, 101 Ky., 12, 19 Ky. Law Rep., 204, 39 S. W., 434.) In 16 Am. & Eng. Ency. of Law, 921, it is said: "In a number of the United States statutes have been enacted which, while varying considerably in phraseology, provide, in effect, that the representations and statements of the insured shall not avoid the contract unless material to the risk. These statutes have been held to be remedial in character, and within the police power of the State. Under these statutes a misrepresentation will not, of course, avoid a policy, unless it relates to a matter which is material to the risk. And it has been held that, unless qualified by words restricting their operation to representations made in good faith, such statutory provisions apply as well to representations fraudulently made as to those made in good faith. But if the provision of the statute is that misrepresentation or statements made by the insured in good faith shall not avoid the policy unless material to the risk, an immaterial representation will avoid the policy if not made in good faith." Our statute belongs to the class first above indicated. At common law the warranty of the truth of an answer in the application

implies an agreement that the subject-matter of the question is to be regarded as material, and that an untrue answer avoids the policy, whether made in good faith or not. The purpose of the statute was to prevent the insurer escaping liability on grounds having no real merit. To avoid the policy, the misrepresentation must be material or fraudulent. It was not the purpose of the statute to enable the insurer to avoid his liability by reason of immaterial misstatements. In the sense in which the statute uses the words, no misstatement is fraudulent which is immaterial. In other words, if the statement is substantially true it cannot be fraudulent. If the statement is not substantially true, then there is a material misstatement within the meaning of the statute. If the insured, when called upon to answer the questions, does not state substantially the truth, his statement is constructively fraudulent, if it is not fraudulent in fact. The word "fraudulent" is added in the statute after the word "material" to bring out this idea, and not to express the idea that the policy might be avoided by the misstatement of a fact wholly immaterial. The substance of the statute is that no misrepresentation, unless material or fraudulent, shall avoid the policy. It does not refer simply to a misstatement on a material subject; that is, on a subject material to the risk. It refers to material misstatements. The misstatement itself must be material; that is, the insured must not materially misstate the facts, and, when he makes a substantial misstatement about anything material to the risk, the policy is avoided. It is not necessary that he should intend to deceive. The instructions given by the court were misleading. There was no question that the assured made the answers contained in the application. In lieu of instructions 1 and 3,

given by the court, he should have set out in an instruction the questions and answers above quoted, and should have told the jury that they should find for the plaintiffs if the answers were substantially true, that otherwise they should find for the defendant, although there was no intention to mislead or deceive the company; and that the answers were not substantially true if the assured drank materially more whiskey than as stated. The habits of the assured as to drinking intoxicants are a material matter to the insurer. In Mutual Life Insurance Company v. Thompson, 94 Ky., 253; 14 Ky. Law Rep., 800; 22 S. W., 87, the questions related to the former habits of the assured. But in that case the court said: "It is of vital importance for an insurance company to know, before issuing a life policy, whether the applicant is thus temperate in his habits, for obviously he would not be a fit subject for insurance, nor could a company prudently issue to him a life policy, if he was not then temperate in his habits of drinking intoxicating liquor; and, consequently, if he had made a false statement in that particular, it would be no answer to say the habits were not such as to impair his health, because insurers have a right to protect themselves by guarding against the risk of pernicious habits." The questions here related to his habits at the time the insurance was taken, and, if the answers contained a material misrepresentation, there can be no recovery.

Judgment reversed, and cause remanded for a new trial.