## CAREY v. FOSTER, ASSIGNEE.

ASSIGNMENTS FOR THE BENEFIT OF CREDITORS — PAYMENT OF TAXES BY ASSIGNEE — LIABILITY OF ASSIGNEE TO HIS GRANTEE FOR TAXES PAID BY THE LATTER.

1.  Section 3850 Revised Statutes, as amended by the Act of March 9, 1888 (L. 1888, p. 144), providing that, as between grantor and grantee, where there is no express agreement in writing as to which shall pay the taxes that may be assessed upon the property sold, if the property is conveyed after January first, the grantor shall pay the taxes thereon for that year, applies to the sale of real property made by assignees for benefit of creditors, appointed, qualified, and acting under the Act of March 13, 1890, regulating voluntary assignments.

2.  Where an assignee for the benefit of creditors holding and acting under a deed of assignment executed and delivered July 20, 1893, and recorded July 22, 1893, sold real property belonging to the assigned estate May 15, 1895, and there was

no agreement in writing as to the payment of taxes between the assignee and purchaser, the assignee is legally bound to pay the taxes assessed on such property for the year 1895.

3.    The purchaser having on December 27, 1895, paid the taxes levied on the property for the year 1895, to prevent the sale of the property for such taxes, the assignee having refused to pay them; such purchaser can recover from the assignee the amount so paid for such taxes, there being no agreement in writing between the assignee and the purchaser as to who should pay such taxes, and the legal title to such real estate being vested in the assignee throughout the year 1895, up to the date of sale, May 15, 1895.

4.    Upon the facts stated in the petition in this case; Held, that the defendant, an assignee for the benefit of creditors, was liable to the plaintiff, his grantee, for the taxes paid by plaintiff.

5.    The lien of taxes is not one of the liens or incumbrances intended to be affected by, and is not included in the provisions of Sec. 13 of Chap. 51 of the Laws of 1890, regulating voluntary assignments, which permits an assignee to sell any of the property assigned upon which there are liens and incumbrances, subject to the same, but authorizes the payment of such liens or incumbrances only when the assignee is satisfied that the general fund would be materially increased by such payment, and then only upon application by petition to the judge or court for leave to do so.

[Decided December 22, 1897.]

RESERVED Questions from the District Court for Laramie County, HON. RICHARD H. SCOTT, Judge.

The petition in this case set out that on July 20, 1893, Thomas A. Kent made a general assignment to defendant Foster, for the benefit of creditors, that defendant took possession of all the property and qualified on July 22, 1893, and "is now and has been" ever since the duly qualified and acting assignee, and in possession and control of the assigned property. That on May 15, 1895, defendant, in pursuance of the statute, and by order of the district court, sold at public auction to Joseph M. Carey, the plaintiff, certain real estate in Laramie County. That afterward, on the 7th day of June, 1895, defendant

made a deed for the property to the defendant, and plaintiff paid to him the purchase money, $1,400. That there was no express agreement in writing as to who should pay any taxes that might thereafter be assessed on the land for the year 1895. That thereafter there was assessed against, and levied thereon, for the year 1895, by the Board of County Commissioners of Laramie County, taxes to the amount of $148.50. That the defendant assignee failed and refused to pay the taxes, and the plaintiff, on the 27th day of December, 1895, in order to prevent the sale of the land for the taxes, and to prevent them from becoming delinquent, and having added to them the statutory penalty, paid the amount to the county. That the defendant refusing to repay it, the plaintiff brings this suit to recover the amount. There was a general demurrer to the petition, and the district court certified the following as important and difficult questions :

First: Does Section 3850 of the Revised Statutes of Wyoming, as amended by the Act of March 9, 1888, apply to the sale of real property made by assignees for the benefit of creditors, appointed, qualified, and acting under the Act of March 13, 1890, being Chapter 51 of the Session Laws of 1890 ?

Second: In the case of a sale on May 15, 1895, by such assignee, of real property held and possessed by him under a deed of assignment executed and delivered on the 20th day of July, A. D., 1893, and duly recorded and indexed on the 22d day of July, 1893, who is legally bound to pay the taxes assessed on such property for the year 1895, in the absence of any agreement in writing as to the payment of taxes between the assignee and purchaser ?

Third: Upon the payment on December 27, 1895, by a purchaser of real estate at a sale made on May 15, 1895, by an assignee for the benefit of creditors of the taxes levied on such property for the year 1895, to prevent the sale of the property for such taxes, the assignee having refused to pay them, can such purchaser recover from the assignee the amount so paid for such taxes, there being no

agreement in writing between the assignee and the purchaser as to who should pay such taxes, and the legal title to such real estate being vested in the assignee throughout the year 1895 up to the date of sale?

Fourth: Under the facts stated in the petition, is the assignee, the defendant therein, liable to the purchaser, the plaintiff, for the taxes paid by the plaintiff?

Section 3850, as amended, referred to in the first question 'is as follows: "As between the grantor and grantee of any property, real, personal, or mixed, when there is no express agreement in writing as to which shall pay the taxes that may be assessed thereon, if such property is conveyed on or after the first day of January, then the grantor shall pay the taxes thereon for that year." Section 13 of the Assignment Act of the Laws of 1890, p. 87, is as follows: "Any part of the property assigned on which there are liens or incumbrances may be sold subject to such liens or incumbrances; but in case the assignee should be satisfied that the general fund would be materially increased by the payment of such liens or incumbrances, he shall make application by petition to the judge or the court for leave to do so and abide its order in that behalf. Before the holder of any lien or incumbrance shall be entitled to receive any portion of his debt out of the general fund, he shall proceed to enforce the payment of his debt by sale or otherwise of the property on which said lien or incumbrance exists; and for the residue of such claim such holder of such lien or incumbrance shall share *pro rata* with the other creditors, if entitled to do so by the laws of this Territory."

*Clark & Breckons*, for plaintiff.

The statute of 1888 prescribing the one, as between grantor and grantee, liable for the taxes in the absence of an express written agreement, makes no distinction between persons who hold a legal title for their own use and those who hold it in a trust capacity; which would seem to require no argument that this meant persons who

hold property in a trust capacity as well as others. Where the question has arisen in the absence of statutory rule, it has frequently been held that the sale of property by an assignee for the benefit of creditors was a sale free from all liens and incumbrances, and that the maxim "*caveat emptor*" did not apply. (Burrill on Assignments, 4th ed., Sec. 416; Adams v. Humes, 9 Watts, 305; Ellis v. Foster, 7 Heisk, 131; Childress v. Vance, 1 Bax., 409.) Taxes due to the State or to municipal corporations constitute an incumbrance which, in the absence of statutory provision or direction contained in the order of sale to the contrary, the purchaser must pay. But taxes accruing while the real estate is in the possession of the heirs are payable by them, because they are entitled to the rents; and such as accrue on real estate which comes to the executor or administrator are payable by him, and the purchaser has the right to have them discharged out of the purchase money. (2 Woerner on Adm., Sec. 482; Moore v. Moore, 22 La. Ann., 226; Fulton v. Nicholson, 7 Md., 104; Brown v. Evans, 15 Kan., 88; Desty on Tax., p. 697; In re Mullin, 17 F. C., 576, 8 Ben., 526; Brown v. Kime, 72 Ia., 342; Brooks v. Eighmey, 53 Ia., 276; Wine v. Hdw. Co., 67 Tex., 40.)

Section 13 of the Assignment Act does not change the liability which otherwise rests upon the assignee to pay the taxes. 1. The section does not refer to the tax lien. 2. It refers only to liens upon the property at the time of the assignment. 3. It does not expressly or impliedly repeal the law of 1888. That it does not apply to the lien of taxes is shown by a reference to the policy of the State as to taxes, and it is evident it has regard only to the personal indebtedness of the assignor.

An assignee's sale is not a judicial sale. (Rorer on Jud. Sales, Secs. 1, 16; Dresbach v. Stein, 41 O. St., 70; Burrill on Assignments, 4th ed., Sec. 14; Drain v. Mickel, 8 Ia., 438; Beck v. Parker, 65 Pa. St., 262; Dehner v. Helenbaeber, 7 Ill. App., 47; State v. Foster, 5 Wyo., 199; De Greyear v. Court, 49 Pac., 983; 5 Cal., 196; 12 Ency. L., 279.)

It was the duty of the assignee to list the property for taxation. (R. S., Sec. 3778.) Also his duty to pay them. (1 Warvelle on Vend., 191; Burrill, p. 669; 27 Ency. L., 164; 38 Fed., 291; Bald., 154.) With reference to the decision in Gavin v. Burns, 118 Ind., 320, and the contention that by the adoption of the Indiana statute of assignments, we have adopted their construction; there is an exception to that rule. It does not prevail in cases where the adoption of the construction of the other State would bring about lack of harmony with the general policy of the State. (23 Ency. L., 433–435.)

*John W. Lacey*, for the defendant.

• The law of 1888 (Ch. 69, Sec. 3), it seems reasonable to say, does not relate to any sale by an officer of court as such, but to sales made between private individuals dealing with one another. Sheriffs, as to personalty, have an ownership as clear and full as that of an assignee for creditors. (Freeman on Ex., Sec. 268; Dunkin v. Mc-Kee, 23 Ind., 447; Martin v. Watson, 8 Wis., 315; Weatherby v. Covington, 3 Strob., 27.)

There is no warranty in judicial sales. (Waples v. U. S., 100 U. S., 630; The Monte Allegre, 9 Wheat., 616; Freeman on Ex., Sec. 335.) The maxim of *caveat emptor* applies both in regard to title and quality, in sales by executors, administrators, or trustees. (Ware v. Houghton, 41 Miss., 370.) In judicial sales the only thing sold is the interest and estate of the parties to the proceeding. (Brown v. Wallace, 4 G. & J., 479; Bank v. Martin, 7 Md., 342; Slothower v. Gordon, 23 Md., 1; Downing, 35 Md., 474.) A sale of land by an administrator is a judicial sale, and the rule of *caveat emptor* applies. (Lynch v. Baxter, 4 Tex., 431; Thompson v. Munger, 15 id., 533; Edmundson v. Hart, 9 id., 554; Williams v. McDonald, 13 id., 322; Doxey v. Burns, 37 id., 719.) Upon a sale by a receiver the purchaser takes subject to existing liens. (Beach on Receivers, Sec. 732.) Again as to administrators. (9 Ala., 297; id., 285; 18 id.,

752; 26 id., 547; 25 id., 681; 58 id., 115.) In Bankruptcy. (56 Ala., 266.) As to Guardians. (Byrd v. Turpin, 62 Ga., 591.) Administrators. (Jones v. Warnock, 67 Ga., 484.) Court officers. (England v. Clark, 4 Scam., 486; Holmes v. Shaver, 78 Ill., 578; Tilley v. Bridges, 105 Ill., 336; Reeve v. Mitchell, 15 id., 297; Dean v. Morris, 4 G. Gr., 312; Holtzinger v. Edwards, 51 Ia., 384.) Administrators. (Mellen v. Boarman, 13 S. & M., 100; 36 Miss., 178; 44 id., 533.) Execution sale. (74 N. C., 278; 4 Dev. & B., 160.) Assignee in bankruptcy. (77 N. C., 134.) Guardian. (33 Ark., 321.) Commissioner in partition. (49 Ill., 388; 60 id., 164.) Judicial sales generally. (77 Va., 135; 36 Ill., 523; 82 Va., 937; 33 Ala., 210; 61 Mo. App., 435; 69 Ill., 431; 11 R. I., 565; 31 Miss., 430; Arnold v. Donaldson, 46 O. St., 73; Lewark v. Carter, 117 Ind., 206; Burron v. Mullin, 21 Minn., 374; Van Vleck v. Enos, 34 N. Y. Supp., 754; Maul v. Hellman, 58 N. W., 112; Butter v. Fitzgerald, 61 id., 640; 58 id., 1020; id., 953; 53 id., 481; 4 Am. L. Reg., 459; 19 So., 440, 93 U. S., 424; 3 McArthur, 262.)

Under Section 13 of the Assignment Act, the assignee can not sell any of the assigned property free from incumbrance in the absence of any of three conditions.    1. He must be satisfied that the general fund would be materially increased by their payment.    2. He must make application for leave to pay them.    3. He must abide the order of the court, whatever it may be.

Our assignment law was borrowed from Indiana. The courts of that State in Burns v. Gavin, 118 Ind., 320, construed Section 13, holding it applicable to tax liens. We have adopted that construction, together with the statute under familiar rules.

CORN, JUSTICE.

The question in this case briefly stated is whether under our statutes the defendant assignee is a "grantor" within the meaning of Sec. 3, Chap. 69, Laws of 1888, and if

so, is the section, in so far as it affects assignees, in conflict with, and repealed by Section 13, of the assignment law, passed in 1890? The principles involved, independent of the statutory provisions above set out, have been argued very ably by counsel upon both sides. But in the view we take, it will not be necessary to go to any great length into this discussion, or into a careful consideration of the great mass of authorities cited.

It is plain that the language of Section 3 is broad enough to cover the case of a conveyance by an assignee, the term "grantor," being the proper and customary word to designate the party who conveys by deed. And there can be no question that when an assignee conveys any of the trust property by deed, he is properly and accurately described as the grantor in the deed.

But it is urged that the reasonable construction of the statute is that it relates only to sales made between private individuals, and that it can not be held to apply to court officers, sheriffs in sales under execution, commissioners in sales in partition, and trustees generally, when required to make sales in their official or representative capacity. That a sheriff is often required to make sales of land near the beginning of the year and months before the taxes upon it for the year are levied, or the amount in any way ascertained. That in such cases the officer would be unable to pay the taxes, would be unable to know what amount to retain in his hands for the purpose, and yet would be required by law to return his writ and turn over the proceeds of sale before the amount of the taxes for the year was, or could be, ascertained.

But the points of difference between the position and duties of a sheriff and those of the assignee of an insolvent debtor are very marked. The requirement of the execution is simply that he cause to be made of the property of the debtor the money specified in the writ, and it empowers him to levy upon and sell property for that purpose. In the case of real estate, at least, he is the owner only in this very restricted sense. He is in no

sense the grantee, or the agent of the debtor. The assignee upon the other hand is the grantee of the debtor, takes title from him to the property in trust by deed, has the legal title and is the agent of his grantor for the disposition of the property subject to the regulations of the statute. He does not derive his title or his powers from the statute, for in the absence of any statute the deed would be valid and effective for the purpose. There are measurably the same distinctions between the office and duties of masters, commissioners, or other court officers and those of assignees under our statutes. It is therefore unnecessary to decide, and we do not decide in this case, to what extent the provision may apply to sales by sheriffs or other officers.

Section 3 is an amended form of Section 3850 of the Revised Statutes, which provided that, in the absence of an agreement in writing upon the subject, if a conveyance was made prior to April 1, the taxes upon the property should be paid by the grantee, if after April by the grantor. Without doubt the enactment was for the purpose of preventing misunderstandings and possible litigation between vendors and purchasers. But, owing no doubt to the difficulty experienced in remembering the exact date when the grantee ceased to be and the grantor became liable for the taxes as between themselves, the Legislature deemed it expedient to further simplify the relations of the parties by providing in substance that the grantor should in all cases pay the taxes for the current year in which the conveyance was made, when there was no agreement in writing to the contrary. The object and purpose of the statute seem to be sufficiently plain.

In this case the assignee was the legal owner of the property, it was under his control and in his care, if taxes should be assessed against it at any time from the day he took possession as assignee up to the date of sale, it would be in his name as owner, and it would be his duty to pay them and protect the property from tax sale. He had under his control whatever funds there might be of

the assigned estate, and it would have been his right and
duty to appropriate so much of them as might be neces-
sary for the purpose.    His power to sell was not conferred
by any court or by any statute, but existed independent of
both by virtue of the deed of assignment.    His powers
are only regulated by the statute, and the control of the
court is supervisory only.    If rents and profits accrued
while he was in possession of the land, it was his right
and duty to collect and receive them.    He had, too, the
same power and opportunity as any other grantor to protect
himself against the payment of the taxes for the current
year by an agreement in writing, if such was the intention
of the parties.    In short, it does not appear that he was in
a position different from that of grantors, generally,
except that he was not the equitable owner of the prop-
erty; and it is not apparent how any consideration of this
fact can affect the operation of the statute.    The bene-
ficial ownership of the estate was in the creditors, and it
was being handled, cared for, and disposed of by the
assignee in their interest for the payment of their claims.

We can not perceive that by virtue of the assignment
either the assignee, the legal owner, or the creditors as
the equitable owners, acquired any superior rights over
other owners of real estate, or that when it came to
making a sale they occupied any different attitude toward
purchasers, or were entitled to any exemption from the
operation of the statute other than the grantors of prop-
erty which had not been assigned.

But it is urged if Section 3 applies to assignees, that
it is repugnant to Section 13, passed later, and is to that
extent repealed; and we are cited to the case of Burns v.
Gavin, 118 Ind., 320, decided under a statute of assign-
ments nearly identical with ours, and from which ours was
apparently taken.    In that case it does not appear from
the statement of facts whether the taxes in controversy
were assessed against the property while in the hands of
the assignee, or were a lien at the time of the assignment,
and it is to that extent of uncertain authority in this case.

But if it was intended in that case to decide that the assignee was only permitted by law to pay taxes assessed against the assigned property while in his possession as assignee, when he should be satisfied that the general fund would be materially increased by their payment, and then only upon petition to the court and by its order, we should be unable to adopt the view of that court. Such is not the policy of our laws. It is contemplated that taxes shall be paid by those against whom they are assessed and there is no exception or exemption in favor of assignees in case of taxes assessed against property in their hands.

No court in this State has lawful power to say that taxes legally assessed against property in his hands shall not be paid by an assignee, and the fact that such payment would increase or diminish the general fund, would not increase or diminish the power of the court in that regard. All taxes upon real property are made a perpetual lien upon it; those upon personalty are made a lien upon it and also upon any real property of the owner; heavy penalties are provided to be inflicted upon any person refusing to assist in listing his property for taxation, or to take the oath required by law; in the administration of the estates of deceased persons the law prohibits any distribution until all taxes have been paid. And in general such an interpretation of Section 13 as is insisted upon under the authority of the Indiana case would be out of line with the entire revenue legislation of this State. And, indeed, we think the language of the section forbids any such interpretation. The first clause of the section provides that "any part of the property assigned on which there are liens or incumbrances may be sold by the assignee subject to such liens or incumbrances; but in case the assignee should be satisfied that the general fund would be materially increased by the payment of such liens or incumbrances, he shall make application by petition to the judge or the court for leave to do so and abide its order in that behalf." As already stated, it can not be

presumed in the absence of express words indicating such intention, that it was the purpose of the Legislature that the right of the collector to collect from the assignee, and of the assignee to pay, such taxes, should await and depend upon the opinion of the assignee as to whether such payment would materially increase the general fund in his hands; and further to await his application to the court and the court's order to ascertain whether such taxes were payable by the assignee. Quite obviously, we think, the lien of taxes is not one of those intended to be affected by these provisions. But the second clause is still more persuasive of the same conclusion that the section does not apply to the lien of taxes. It is as follows : "Before the holder of any lien or incumbrance shall be entitled to receive any portion of his debt out of the general fund, he shall proceed to enforce the payment of his debt by sale or otherwise of the property on which said lien or incumbrance exists; and for the residue of such claim, such holder of such lien or incumbrance shall share *pro rata* with the other creditors, if entitled so to do by the laws of this Territory." That the State should be required first to sell property of the estate before it can call upon the assignee for payment in money, or be permitted to receive payment in money for its taxes from the assignee, and that, too, in the face of the provision of the general revenue law that all taxes are payable without notice or demand, seems preposterous upon its face. And that its lien shall in any case be postponed and its claim required to take its chances and share *pro rata* with the general creditors of the insolvent estate, is entirely out of line with the revenue legislation of this State.

It is to be observed, too, that our statute while making the taxes a lien upon real property does not fix the time when the lien attaches. Section 3844, Rev. Stat., seems to make the taxes upon personal property a lien upon such property from the time of the levy, which is ordinarily not until the first Monday of September in each year. If the analogy be followed in the taxation of real property, it

might easily occur that an insolvent estate would be fully administered and the assignee discharged, after the assessment of the property in his hands for taxation, but before the taxes became a lien.   In such a case the claim for taxes would not come at all within the description of Section 13.   But it is not necessary for the purposes of this case that we should decide at what time the lien attaches. We do not think it necessary either to decide a number of propositions very ably discussed in the briefs of counsel, as the foregoing considerations as to the effect and operation of our statute are in our opinion conclusive of the questions presented.

The first, third, and fourth questions are answered in the affirmative; and to the second the answer is, The assignee.

POTTER, C. J., concurs.

KNIGHT, JUSTICE, did not sit in this case, it having been heard and submitted prior to the death of the late Chief Justice Conaway.