[No. 12008.   Department Two.   January 5, 1915.]

PORT OF SEATTLE, *Respondent*, v. YESLER ESTATE *et al.*,
*Appellants.*[1]

EMINENT DOMAIN—TITLE ACQUIRED — WHEN PASSES — STATUTES.
The title to the property condemned does not pass until the payment
into court of the damages awarded, under Rem. & Bal. Code, § 7784,
providing that upon proof that damages awarded had been paid
. . . into court . . . the court shall enter an order that the
condemner shall have the right to take possession of the property
"and thereupon the title to any property so taken shall vest in fee
simple in such city or town."

TAXATION—ASSESSMENT—LIEN—WHEN ATTACHES — GRANTOR AND
GRANTEE.  Where an award of damages in eminent domain proceed-
ings was made on January 17, and judgment was entered for the
same January 21, but the damages were not paid into court until
February 20, so that the title did not pass until February 20, the
taxes assessed for the previous year became a lien on the property,
as between the parties, on February 3d, under Rem. & Bal. Code,
§ 9235, making taxes a lien on real estate from March 1st in the
year in which they are levied, and providing that, as between grantor
and grantee, the lien shall not attach until the first Monday of the
following February.

EMINENT DOMAIN — TITLE ACQUIRED — WHEN PASSES — STIPULA-
TIONS—PAYMENT OF AWARD—RELATION.  Where, in eminent domain
proceedings, pursuant to a stipulation, an award of damages was
made January 17, and judgment thereon was entered January 21,
but the award of damages was not paid into court until February
20 (the lien for taxes thereby attaching on February 3d before the
title passed), the payment of the award does not relate back to the
17th day of January, as between the parties, by reason of provisions
in the stipulation authorizing the award of damages to the effect
that out of the award shall be paid all liens, including taxes, which
may be adjudged valid liens "as of this date," the amount of such
liens to be retained out of the award until finally determined.

SAME—PASSING OF TITLE—AWARD IN COURT—IMPRESSED WITH TAX
LIEN.  Where the title to land condemned did not pass to the con-
demning municipality until after February 3d, when, as between
grantor and grantee, the general taxes for the preceding year be-
came a lien upon the land, so that the land itself could not be
reached in the collection of the taxes, the award paid into court
should be impressed with a lien for the taxes, attached to the land
as against the condemnee as owner.

[1]Reported in 145 Pac. 209.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 17, 1914, upon findings in favor of a claimant to funds paid into court upon a condemnation award, after a trial to the court. Affirmed.

*Bronson & Robinson* and *Hughes, McMicken, Dovell & Ramsey,* for appellants.

*John F. Murphy* and *Samuel Morrison,* for respondent.

Crow, C. J.—In May, 1912, the Port of Seattle, a municipal corporation, hereinafter called the Port, filed, as plaintiff, in the superior court of King county, its petition in eminent domain against Yesler Estate, incorporated, Joshua Green, Laura T. Green, his wife, the county of King, and other defendants, to condemn lots 1 and 2, in block 272, Seattle tide lands belonging to the Yesler Estate, and lots 3, 4, 5, 6 and 7, in the same block, belonging to Joshua Green and wife. The Port intended to pay for these lots from the proceeds of certain bonds which it was authorized to issue, but considerable delay occurred in the sale of the bonds which caused a like delay in the condemnation proceeding. On or about January 3, 1913, the Port negotiated a sale of its bonds, payment of $500,000 to be made as soon as they were ready for delivery and approved by attorneys in New York City. An order was entered adjudging a public use, and the question of damages was, by the consent of all the parties, submitted to the court for trial sitting without a jury. On January 17, 1913, the date of the trial, a stipulation, to which King county was not a party, was entered into between the Port, the Yesler Estate, and Joshua Green and wife, reading as follows:

"It is hereby stipulated by and between the Port of Seattle, Yesler Estate, Incorporated, and Joshua Green and Laura T. Green, his wife, parties to the above entitled action, by their respective attorneys, that the condemnation judgment to be entered in the above entitled cause shall provide that the amount fixed in the verdict of the jury, or the find-

ings of the Court, shall not bear interest during the period of sixty (60) days following the rendition of said verdict or findings, and that the plaintiff shall not be required to pay interest during the said period, provided that plaintiff pay such judgment forthwith upon the receipt of the proceeds of the sale of its first Million Dollar issue of bonds.

"It is further stipulated that out of said judgment award all liens of every kind and nature upon said property, including general or special taxes, which may be adjudged valid liens as of this date, shall be paid, it being understood that the amount of any such lien, or liens, asserted by any person, corporation or municipality may be determined by the court, and pending such determination of such lien or liens, shall be retained in the registry of the court to be paid out in accordance with the final judgment of the court, or of the Supreme Court in case of appeal."

After hearing the evidence, the court made findings of fact and awarded damages as the value of the lots in the sum of $120,000 for the lots owned by the Yesler Estate, and in the sum of $280,000 for the lots owned by Joshua Green and wife. On January 21, 1913, a subsequent stipulation, to which King county was not a party, was entered into between the Port, the Yesler Estate, and Joshua Green and wife, reading as follows:

"It is hereby stipulated and agreed by and between the parties hereto that, in the stipulation made and filed at the time of the trial thereof on January 17, 1913, it was the purpose and intention of the parties hereto to provide that, if the tax for the year 1912 were held to be a lien upon the property appropriated in the hands of plaintiff which plaintiff would be required to pay, the amount of such tax should then be paid out of the said judgment award, but not otherwise."

In pursuance of the award and these stipulations, a judgment was signed and entered on January 21, 1913, awarding the damages, which judgment in part provided:

"It is further considered, ordered, adjudged and decreed by the court that said awards shall not bear interest during the period of sixty days from the 17th day of January, 1913, and that the plaintiff shall not be required to pay interest

during said period; provided, that the plaintiff shall pay said awards into court as soon as it receives the proceeds of the sale of the first million dollar issue of bonds of said Port of Seattle.

"It is further considered, ordered, adjudged and decreed that out of the said awards there shall be paid all liens of every kind and nature upon said property, including special assessments and general taxes which may be adjudged valid liens against said property in the hands of plaintiff as of date of January 17, 1913.

"It is further considered, ordered, adjudged and decreed that upon the payment into the registry of this court of said awards and the costs of these proceedings taxed in favor of said respondents, the title to the property herein described shall be vested in fee simple in the Port of Seattle, and said Port of Seattle shall be entitled to the immediate possession thereof."

The Port experienced further delay in the sale of its bonds, with the result that the awards were not paid into court until February 20, 1913. It is conceded that general taxes and certain special assessments, payable to King county, had been levied and assessed on the condemned lots for the year 1912. After the awards had been paid into court, the Yesler Estate and Green and wife, withdrew the respective amounts due them, less $1,504.52 taxes and assessments on the Yesler Estate, and less $3,195.48 taxes and $217 assessments on the Green lots, which sums were permitted to remain in the registry of the court subject to further litigation.

Thereafter, the Yesler Estate and Green and wife filed in the condemnation case, and served upon King county, their respective petitions claiming the residue of the awards then remaining in the registry of the court. King county, by answer, demanded payment of the funds to the county treasurer in satisfaction of the 1912 taxes and special assessments which had been levied on the lots. The trial court made findings of fact and conclusions of law, upon which a final judgment was entered, directing payment of the taxes and assess-

ments to King county.  The Yesler Estate and Green and wife have appealed.

It will be noticed that the award of damages for the value of the lots condemned was made on January 17, 1913; that judgment for the same was entered on January 21, 1913, but that the damages were not paid until February 20, 1913. Under Rem. & Bal. Code, § 9235 (P. C. 501 § 215), taxes become a lien upon real estate from and including the 1st day of March in the year in which they are levied until paid, but as between grantor and grantee, such lien shall not attach until the first Monday of February of the succeeding year, which in this instance would be February 3, 1913.  The controlling question in this case seems to be whether the title which the Port obtained to the lots passed to it on February 20, 1913, the day upon which the awards were finally paid, or whether, upon the payment of the awards, the passing of the title, in pursuance of the judgment and stipulations, related back to January 17, 1913.  The further questions are presented, whether, at the time title passed, the taxes were a lien upon the real estate, and if so, whether the damages awarded were, in lieu of the lots, impressed with a lien in favor of King county for the satisfaction of such taxes.

Appellants insist that, by the judgment and decree of January 21, 1913, which they say was invited by the stipulations, the Port was required to take the property and pay the awards immediately upon receiving the proceeds of the sale of its bonds; that the payment of the awards on February 20, 1913, related back to January 17, 1913, the date of the findings and awards made in the condemnation proceedings; that, by relation, the title vested in the Port as of the later date, and that no taxes were to be paid out of the awards, except such as were adjudged valid liens on the lots in the hands of the Port as of the date of January 17, 1913.

The vital question presented for our consideration, is whether the title passed to the Port on February 20, 1913, the day on which it paid the awards.  It would seem that this

question is answered in the affirmative by Rem. & Bal. Code, § 7784 (P. C. 171 § 63), a section of the eminent domain act pertaining to municipal corporations. *In re Twelfth Avenue South*, 74 Wash. 132, 132 Pac. 868. The section cited provides that,

"The court, upon proof that just compensation so found by the jury, or by the court in case the jury is waived, together with costs, has been paid to the person entitled thereto, or has been paid into court as directed by the court, shall enter an order that the city or town shall have the right at any time thereafter to take possession of or damage the property in respect to which such compensation shall have been so paid or paid into court as aforesaid, *and thereupon, the title to any property so taken shall be vested in fee simple in such city or town.*" Rem. & Bal. Code, § 7784 (P. C. 171 § 63).

Appellants, however, insist that, by reason of the stipulations of the parties and the terms of the judgment, the payments when made related back to January 17, 1913, which caused the transfer of the title to relate back to that date. In support of this contention, they cite *North Coast R. Co. v. Gentry*, 73 Wash. 188, 131 Pac. 856, quoting certain expressions therefrom which standing alone would appear to lend some force to their argument. In the *Gentry* case, there had been two trials awarding damages in condemnation proceedings. From the judgment entered on the award made at the first trial, the property owners appealed to this court, and secured a reversal which necessitated a second trial. Immediately after the first trial, the railroad company paid into court the damages awarded, thereby electing to take the property. Had the judgment entered therein been affirmed, the title would undoubtedly have passed as of the date of the payment, and a like result would follow upon the payment of any additional damages that might have been thereafter awarded. Pending the appeal, the railroad company withdrew the award from the registry of the court. On the second trial a larger award was made. Payment of this award

into court was made by the railroad company, which payment continued its election to take the property. Later the railroad company commenced an action to require the former owners to pay certain taxes which had become a lien on the real estate after payment of the first award, but prior to the payment of the second award; its theory being that under the statute the title finally passed on the date of its payment of the second award. After reviewing several sections of the eminent domain act under which the condemnation had been made, we held that, when the railroad company paid the first award, it elected to take the property; that without authority it had wrongfully withdrawn its payment pending the first appeal, and that, when it made a payment of the second award and continued its election to take the property, the title which it then obtained related back to the date of its payment of the first award. In so holding, we used the following language on which appellants now rely:

"If in the case before us, on the original appeal there had been an affirmance of the original judgment for damages, the right of abandonment so suspended by payment of the award into court would have been forever lost, and the respondent's title would have related to the date of the original judgment and decree of appropriation, not to the date of affirmance."

It is apparent that the decision cited has no application to the facts now before us. No payment of an award was made by the Port at any time prior to February 20, 1913, and under § 7784, *supra*, the title passed at that time. There is no sufficient reason for holding that it related back to January 17, 1913. The judgment, as above quoted, contemplates that the title would not pass until the award was paid. It in effect so provided. It is apparent that, as against appellants, the taxes in question became a lien upon the property on February 3, 1913, prior to the date on which the title passed.

In *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68, it was held that taxes definitely assessed and actually delinquent, could not be collected by a sale of

land upon which they were a lien after title thereto had been acquired by a municipality in the exercise of its sovereign right of eminent domain. That case, however, is consistent with the idea that although after such condemnation the land itself, while owned by the municipality, could not be reached in the collection of the outstanding and delinquent taxes, the award of damages, when paid into the registry of the court, by the condemning municipal corporation, could be subjected to tax liens, which were payable at the date of the transfer of title to the municipality in the condemnation proceeding, and this course of procedure seems to have been contemplated by the terms of the stipulations, and the provisions of the judgment in this action. Title to the lots having passed on February 20, 1913, after the taxes had become a lien as between grantor and grantee, it would seem to follow that the money paid into court by the condemning corporation should be impressed with a lien for the collection of such taxes, as was done in this case.

There seems to be some contention on the part of appellants that the county, by stipulation, waived its right to a lien upon the fund in question. A reading of its stipulation, in the light of the circumstances and history of the case, shows that its only purpose was to permit the appellants to draw down the award due them, less the taxes involved, the right to which could be thereafter litigated. The county not being a party to the stipulations entered into between appellants and the Port, was not bound thereby.

Our conclusion from the entire record is that the title passed on February 20, 1913; that the taxes were then a lien upon the real estate; that they could not be enforced against land owned by the municipal corporation, and that the trial court properly held them to be a lien upon the awards when paid into court, and properly directed their payment therefrom.

The judgment is affirmed.

Mount, Fullerton, Morris, and Parker, JJ., concur.