[No. 21808.   *En Banc.*   December 12, 1929.]

BETHANY PRESBYTERIAN CHURCH, *Appellant,* v. THE
CITY OF SEATTLE *et al., Respondents.*[1]

[1]Reported in 282 Pac. 922.

*Carkeek, McDonald & Harris* (*Wright & Wright,* of counsel), for .appellant.

*Ewing D. Colvin, Harry A. Rhodes, Thomas J. L. Kennedy,* and *Bruce MacDougall,* for respondents.

PARKER, J.—This is an appeal by the Bethany Presbyterian Church, a corporation, from an order of the superior court for King county awarding to King county $343.63, now in the hands of the clerk of that court, claimed by the church as part of the compensation awarded to it in an eminent domain proceeding prosecuted by the city to final judgment therein, wherein the city acquired title to certain land from the church for street purposes. The city claims the right to have the money paid to the county for general taxes levied against the land for the year 1928, to the end that all possible right of the county to enforce payment of such taxes from the city or to enforce a lien against the land for the taxes shall be satisfied. The county, as we understand the argument of its counsel, claims the money for payment of the taxes upon the theory that the money was, in legal effect, so awarded for its benefit in the eminent domain proceedings; not, however, waiving its alternative claim of right to enforce a lien against the land for the taxes as against the city, should the money be finally awarded to the church.

. The controlling facts all appear by written stipulation entered into between the church, the city and the county, and may be summarized as follows: On March 2, 1928, the city commenced, in the superior court for King county, an eminent domain proceeding looking to the acquiring of the land for street purposes. Such proceedings were had therein that, on July 5, 1928,

" . . . a judgment was signed awarding the sum of $9,427.50 as damages in said condemnation proceedings for the taking of the property sought to be condemned belonging to the Bethany Presbyterian Church, a corporation."

On January 14, 1929, the six months' statutory period, within which the city had the privilege of electing whether it would pay the eminent domain award and take the land or abandon its right to do so, having expired, and the city having failed to expressly so elect, which failure had the effect, in law, of constituting an election by the city to pay the award and take the land (Rem. Comp. Stat., § 9274), the church demanded payment from the city of the full amount of the award. Thereupon a controversy arose between the church, the city and the county as to whether or not the general taxes upon the land levied for the year 1928, amounting to $343.63, should be first paid to the county out of the total award and only the balance thereof paid to the church. To the end that such controversy might be adjudicated by the court without delaying payment to the church of the portion of the total award as to which there was no controversy, a stipulation was entered into between the church, the city and the county, in compliance with which, on January 16, 1929, the whole amount of the award was paid by the city to the church, and the church thereupon deposited with the clerk of the court $343.63, the amount of the taxes in question, to await the court's decision as to whether the church or the county should be paid the sum so deposited. Thereupon that question was submitted to the court for decision, which submission resulted in a decision and order of the court denying to the church the right to the money, and directing that it be paid to the county for the taxes levied against the land for the year 1928. It is from this order that the church has appealed to this court.

When did title to the land pass from the church to the city as the result of the eminent domain proceeding? In Rem. Comp. Stat., § 9231, relating to eminent domain proceedings by cities, we read:

"The court, upon proof that just compensation so found by the jury, or by the court in case the jury is waived, together with costs, has been paid to the person entitled thereto, or has been paid into court as directed by the court, shall enter an order that the city or town shall have the right at any time thereafter to take possession of or damage the property in respect to which such compensation shall have been so paid or paid into court as aforesaid, and thereupon, the title to any property so taken shall be vested in fee simple in such city or town."

The record before us does not show when the formal order, as contemplated by that section, was entered by the superior court. We are warranted in assuming that it was entered simultaneously with the making of the payment of the award by the city to the church, that is, on January 16, 1929. In *Port of Seattle v. Yesler Estate,* 83 Wash. 166, 145 Pac. 209, we held that, under that section, then known as Rem. & Bal. Code, § 7784, title passed to the Port of Seattle at the time it paid the award, it there exercising its eminent domain right as the city exercised it in this eminent domain proceeding under the same statute. Our later decisions in *State ex rel. Struntz v. Spokane County,* 85 Wash. 187, 147 Pac. 879, and *State ex rel. Moore v. Superior Court,* 100 Wash. 481, 171 Pac. 248, are in harmony with that holding. We conclude that title to the land passed from the church to the city on January 16, 1929.

When did the taxes for the year 1928 become a lien upon the land as between the church and the city, viewing them as grantor and grantee? In chapter 130, Laws of 1925, Ex. Ses., p. 293 (Rem.

1927 Sup., § 11097-104), relating to assessment, levy, collection and lien of general taxes, we read:

"Sec. 104. The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday in February of the succeeding year."

This quotation is a reenacted provision of our previously existing statutes. Thus, it becomes plain that, viewing the church and the city as grantor and grantee, title to the land passed from the church to the city on January 16, 1929, without any obligation on the part of the church to the city to assume or pay the taxes levied upon the land for the year 1928.

Does the law regard the church and the city as conventional grantor and grantee, as if a voluntary conveyance had been made by the church to the city instead of title to the land passing by virtue of the eminent domain proceeding and payment of the award as therein adjudicated? Our recent decision in *American Creameries Co. v. Armour & Co.*, 149 Wash. 690, 271 Pac. 896, and the authorities therein noticed, we think, are decisive in favor of the church upon this question; that is, that the title passed from the church to the city, in legal effect, as from grantor to grantee. Our decision in *Port of Seattle v. Yesler Estate*, 83 Wash. 166, 145 Pac. 209, is in harmony with and lends support to this view. Here was a transfer of title from the church to the city as if by deed the church had warranted the title as against existing general tax liens such as would have entitled the city to satisfy such liens out of the purchase price, but not the tax of 1928, as a lien against the land, because, by the above express statutory provision, such tax, as between the grantor church and the grantee city, did not

534

become a lien upon the land until the second Monday in February, 1929, four weeks after January 16, 1929, when the title to the land passed from the church to the city. In justice to the trial judge, we observe that our recent decision in *American Creameries Co. v. Armour & Co., supra*, was decided but a short time prior to the entry of the order here appealed from, and manifestly was not called to the attention of the trial judge.

■ Did the judgment in the eminent domain proceeding rendered July 5, 1928, award to the county, for the 1928 taxes, any portion of the $9,427.50 awarded for the taking of the land? There is nothing in the record before us so indicating. Indeed, so far as the record here advises us, it does not appear that the county was a party to the eminent domain proceeding in the superior court, or that it asserted any right to any portion of the award until it joined with the city in asking payment to it of the $343.63 in the hands of the clerk of the court. We cannot presume that the judgment award rendered July 5, 1928, adjudicated the right in the county to participate in the award to the extent of the amount of the general taxes against the land for the year 1928, to become payable more than six months thereafter, on the first Monday in February, 1929. Indeed, we think it would have been error, prejudicial to the rights of the church, to have so adjudicated in the judgment making the award, for, as we have seen, the church had the right to an award for the city's taking of the land, undiminished by the taxes of 1928, which, as between it as grantor and the city as grantee, would not become a lien upon the land until more than six months thereafter, on the second Monday of February, 1929.

■ There is another matter which seems worthy of some note in our present inquiry, though but briefly

mentioned in the arguments of counsel. In Rem. Comp. Stat., § 9229, we read:

"Such city or town may offset against any award of the jury or court for the taking or damaging of any lot, block, tract or parcel of land or other property, any general taxes or local assessments unpaid at the time such award is made. Such offset shall be made by deducting the amount of such unpaid taxes and assessments at the time of payment of the judgment or issuance of a warrant in payment of such judgment."

This was enacted by chapter 210, Laws of 1909, p. 723, as part of an amendment to our statute providing for the exercise of the right of eminent domain by cities. Reading this provision in connection with the above quoted language of § 104, chapter 130, Laws of 1925, Ex. Ses., p. 293, we think it does not mean that a city acquiring land by an eminent domain proceeding shall have the right to offset and deduct from the eminent domain award the amount of general taxes against the land maturing and payable on the second Monday of February next following the city's acquiring title thereto by such eminent domain proceeding; since, as we have seen, such tax does not, as between the grantor and grantee, become a lien upon the land until such date. Such is the nature of the tax here in question, and therefore it did not become a lien upon the land as between the church as grantor and the city as grantee until after the passing of the title from the church to the city on January 16, 1929.

We deem it proper to here make it plain that we do not express any opinion as to whether or not the county has the right of payment of the 1928 taxes against this land, either as a claim against the city or as an enforceable lien against the land in the hands of the city. We are only deciding that the church is entitled to the whole of the eminent domain award, because, at the time the city acquired title to the land by

its eminent domain proceeding, the tax in question had not become a lien upon the land as between the church as grantor and the city as grantee.

The order of the superior court is reversed and the cause remanded to that court with directions to order payment of the $343.63, now in the hands of the clerk of that court, to the church.

MITCHELL, C. J., TOLMAN, MAIN, FRENCH, and MILLARD, JJ., concur.

