**COMMISSIONER OF INTERNAL REVENUE v. PLESTCHEEFF (two cases).**

**Nos. 8726, 8727.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 18, 1938.

HEALY, Circuit Judge, dissenting.

———◆———

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch, S. Dee Hanson, and Earl C. Crouter, Sp. Assts. to Atty. Gen., for petitioner.

Elder & Hill, A. G. Elder, and Cyril D. Hill, all of Seattle, Wash., for respondents.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

The Commissioner of Internal Revenue has filed a petition to review a decision of the Board of Tax Appeals which permitted

respondents in their income tax return for the year 1932, to deduct the amount of taxes paid during that year on real property acquired by respondents under a devise in 1931.

Respondents were, at times material herein, husband and wife. On April 5, 1931, the wife's father died, leaving a will, by the terms of which real estate in Washington was devised to the wife. A decree, in the probate proceeding, confirmed the devise on December 31, 1931. The wife, during 1932, paid $4,266.69 as taxes on the property devised to her. In their income tax return for the year 1932, which was made on the "cash" basis, respondents claimed a deduction for the amount of the taxes paid. Petitioner audited the return and adjusted the net income by disallowing the deduction for taxes, and assessed a deficiency in the tax of $309.22, on the ground that "the ownership of property in the State of Washington on March 1 is the event which determines the liability for both real estate and personal property taxes and fixes the amount, although not ascertainable on that date". Upon petition for review, the Board determined that there was no deficiency, on the ground that "the taxes assessed on real estate for the year 1931 did not, under the statutes of Washington as construed by its courts, attach and become a perfected lien on said realty prior to October 1931, in which month the tax levy is made in that state." The Commissioner filed in this court a petition to review that decision.

By Remington's Rev. St. of Wash. § 1366, title to real property of a deceased vests in the heirs or devisees immediately upon the death. Real property is "subject to assessment and taxation" on March 1st of each year. § 11111. The assessment year commences "on the first day of March and [ends] on the last day of February in each year". § 11242. The board of county commissioners is required to "levy taxes" at its October session, and "on or before the second Monday in October in each year, to certify to the county assessor of the county the amount of taxes levied upon the property in the county". §§ 11238, 11239. The county auditor is required to deliver "to the county treasurer the tax-rolls of his county for such assessment year" on the "first Monday in January next succeeding the date of levy of taxes", but no collection thereof shall be made prior to the first Monday in the following February. § 11243.

Section 11265 provides in part: "The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday in February of the succeeding year."

■ The Revenue Act of 1932, § 23(c), 47 Stat. 169, 26 U.S.C.A. § 23 note, applicable here, provides that "Taxes paid or accrued within the taxable year" shall be allowed as a deduction in computing net income. It does not limit the deduction to cases where the taxpayer owns the property on which the taxes are paid, but literally includes the case where a taxpayer pays taxes on property not owned by him. The administrative interpretation of the statute, however, limits the deduction to the person who owned the property at the time the lien for the taxes attaches.[1] G.C.M. 6667 (C.B. VIII—2, 94). Subsequent tax acts have contained the same provision as the Revenue Act of 1928, the act under which the administrative interpretation above referred to, was made. The administrative interpretation therefore stands approved by Congress. Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739.

Therefore, the right to the deduction is dependent upon the date upon which the lien for the taxes attached. Both of the parties hereto rely upon the law of Washington as the determinative factor in ascertaining such date, and we consider the cause upon that assumption. Cf. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199. See also Welch v. Kerckhoff, 9 Cir., 84 F.2d 295, 298, 106 A.L.R. 1434, and cases cited. If it attached prior to April 5, 1931, the deduction cannot be permitted. We may here assume that the lien attached on March 1, 1931, unless the deceased father and wife were in the position of "grantor and grantee", thus making applicable the provision in § 11265 that "as

---

[1] Article 151 of Regulations 77, promulgated under the Revenue Act of 1932, provides: "In general taxes are deductible only by the person upon whom they are imposed. * * *" This regulation does not aid the solution of the question before us, because in Washington a tax on real property is not a "personal liability against the owner". Olizer v. Krauss, 57 Wash. 26, 106 P. 145, 146.

between a grantor and grantee such lien shall not attach until the first Monday in February of the succeeding year". Since a "grantee" is one to whom a grant is made, we must determine whether or not a devise is included within the term "grant". Petitioner contends that a "grant" does not include a "devise".

■ In ancient times, the word "grant" had a limited meaning and included only a conveyance of incorporeal rights which were transferable only by deed. 2 Tiffany on Real Property (2d Ed.) § 427, 1567. The word now is a "generic term applicable to all transfers of real property". Black's Law Dict. (3d Ed.) 855. It is defined in Webster as a "transfer of property, real or personal, by deed or writing". See also: Ballentine's Law Dict., 561; 1 Bouv. Law Dict., Rawle's Third Revision, 1379; 4 Words and Phrases, First Series, grant, 3151. Thus the broad meaning of the word would now include a devise. That the restricted meaning of "grant" was not intended by the Washington legislature is shown, we think, by the holdings that the relation of grantor and grantee is created by the condemnation of land by a city. Bethany Presbyterian Church v. Seattle, 154 Wash. 529, 282 P. 922; Port of Seattle v. Yesler Estate, 83 Wash. 166, 172, 145 P. 209. We must indulge the presumption that the legislative authority in enacting § 11265, supra, used words in their ordinary sense and with the meaning commonly attributed to them.[2] The ordinarily accepted meaning of "grant" is as above indicated.

■ A further point which suggests itself, relates to the kind of a controversy to which it was intended that the phrase "as between a grantor and grantee" would be applicable. Should the statute be construed to mean "but in a controversy solely between a grantor and grantee as to who is liable for unpaid taxes, such lien shall not attach until the first Monday in February of the succeeding year"? In other words, is the provision which postpones the date when the lien attaches, limited to a controversy solely between a grantor and grantee? In Bethany Presbyterian Church v. Seattle, supra, and Port of Seattle v. Yesler Estate, supra, sufficient of the awards to pay unpaid taxes was left on deposit in the registry of the court in the condemnation proceeding. The taxing authorities made claims to the deposits. Although the grantees (the parties who brought the condemnation proceeding) were still nominal parties to the proceeding, actually the real parties were the taxing authorities and the grantors (the owners of the property condemned), and the actual controversy was between such parties. In any view, the Supreme Court of Washington did not restrict the application of the statute to controversies solely between grantors and grantees. We think it is implied in these cases that such application is not so restricted.

As thus construed, we think the lien did not attach until the February after respondents acquired the property, and they are entitled to the deduction.

Affirmed.

HEALY, Circuit Judge (dissenting):

The construction given by the Board of Tax Appeals to § 11265 of the Washington code was based on the assumed authority of State v. Snohomish County, 71 Wash. 320, 128 P. 667. However, the state court there held only that real property in private ownership on March 1, but in public ownership when the taxes for the year are levied, cannot be subjected to the payment of taxes for that year. The Snohomish County Case is not properly to be taken as authority for the view that the lien of a tax, under the state law, becomes effective only upon the making of a levy.

It is clear, as the majority opinion here assumes, that the date of tax incidence in Washington is March 1, when the lien therefor attaches. Respondents' predecessor in title died on April 5 of the year in question, and the title vested in one of the respondents as devisee on that date. As respondents did not own the land on the date the lien of the tax attached they were not entitled to deduct the amount of the tax in reporting their income. Merchants Bank Bldg. Co. v. Helvering, 8 Cir., 84 F. 2d 478; Walsh-McGuire Co. v. Commissioner, 6 Cir., 97 F.2d 983.

The majority holding is that respondent, Mrs. Plestcheeff, was a "grantee" within the meaning of the state statute postponing the lien of the tax, as between a grantor and grantee, until the first Monday in February of the succeeding year, hence, as to her, the lien attached after she became owner. I think there is no basis for such conclusion. A "grant", in its accept-

ed meaning, does not include a devise. It is true that the word "grant" has sometimes been given a broad definition, as, for example, in Nicholas & Co. v. United States, 249 U.S. 34, 39 S.Ct. 218, 63 L.Ed. 461; and the observations there made with respect to the scope of the term have been incorporated in the definitions found in some of the law dictionaries. The court, however, was there dealing with the word only as it was used in a tariff act.

Despite broad definitions, the term "grant", as used in the law of real property, has never, so far as I have been able to ascertain, been held to include a devise. And none of the definitions given to the word have gone so far as to say that a devise is so included. We are not helped any by the fact that the word has been broadly defined unless the extensions of its meaning reach the situation with which we are here compelled to deal.

The words "convey" and "grant" have been said by the Washington court to be synonymous, Blood v. Sielert, 38 Wash. 643, 80 P. 799; and see Des Moines County Agricultural Society v. Tubbesing, 87 Iowa 138, 54 N.W. 68; Hammond v. Oregon & C. R. Co., 117 Or. 244, 243 P. 767. But the word "convey" is not appropriate in describing a transfer effected by will or descent. "The word [convey] is properly used as intending the passing of title by conveyances, technically so called, and not by wills, which are only quasi-conveyances, and are not properly described by the term 'conveyance'." 13 C.J. 896

The real inquiry, however, is not one of definition but of the sense in which the words "grantor" and "grantee" were intended to be used in the statute before us. The proviso contained in the Washington law is not uncommon. Analogous provisions are found in the statutes of a number of the states. Gault v. Hurd, 103 Kan. 51, 172 P. 1011; Carey v. Foster, 7 Wyo. 216, 51 P. 206; Hughes v. McCreary, Ky., 86 S.W. 522. Their general purpose is to fix the respective obligations of vendor and vendee, as between themselves, in respect of the payment of current taxes, or to make what the legislature considered to be a fair adjustment of the burden, when the parties themselves have made no agreement as to the matter. Carstens v. J. B. Powles & Co., 114 Wash. 588, 195 P. 1017; 66 C.J. 1045.

The devisor-devisee relationship does not arise out of contract, or in consequence of a sale, and provisions of the sort in question have no purpose as applied to that relationship. The genesis of the Washington holdings, which are said in the majority opinion to justify the construction here given the statute, is an earlier holding of the state court to the effect that a transfer effected by condemnation is tantamount to a sale of the property. American Creameries Co. v. Armour & Co., 149 Wash. 690, 271 P. 896; Bethany Presbyterian Church v. Seattle, 154 Wash. 529, 282 P. 922. The state court simply applied the statute to what it had held to be essentially a vendor-vendee relationship, hence one within the legislative purpose. These cases afford no basis for the novel scope ascribed to the statute here.

The order of the Board should be reversed.