[No. 35380. *En Banc.* March 9, 1961.]

ST. PAUL AND TACOMA LUMBER COMPANY, *Appellant,* v.
THE STATE OF WASHINGTON, *Respondent.*[1]

[1]Reported in 360 P. (2d) 142.

*Grosscup, Ambler, Stephan & Miller* and *Slade Gorton,* for appellant.

*The Attorney General, E. P. Donnelly* and *H. T. Hartinger, Assistants,* for respondent.

HUNTER, J.—The plaintiff, St. Paul and Tacoma Lumber Company, purchased certain real property in Pierce County at a tax title sale held in that county on February 7, 1949. In 1956, the plaintiff discovered for the first time that the state of Washington claimed title to the property under an escheat order which had been entered on December 22, 1924, in the probate of the estate of one Joseph Truckey, in the Superior Court for Kitsap County. The order of escheat was filed in Pierce County in 1958. Thereafter, on May 7, 1958, plaintiff brought this action in the Superior Court for Pierce County to quiet title to the property in question. The trial court entered an order quieting title in the state from which the plaintiff appeals.

The facts are as follows: Joseph Truckey, a resident of Kitsap County, died intestate and without heirs on March 5, 1922, at which time he owned the Northwest Quarter of Section 24, Township 18 North, Range 6, E.W.M., situated

in Pierce County, Washington. Under the statutes then applicable, the real-estate taxes assessed upon this property by Pierce County for the year 1922 were levied October 1, 1922 and became a lien on March 1, 1922.

Thereafter, and sometime prior to 1924, by reason of the inability of the administratrix to sell the property for the amount of the taxes which had accrued, she entered into an agreement with the state of Washington whereby an order was entered in the probate proceeding on December 22, 1924, escheating the property to the state "subject to all taxes against the same," and discharging the administratrix.

The appellant contends that the tax lien survived the order of escheat. We agree. The statutes material here regarding escheats are as follows:

RCW 11.08.021. "Whenever any person possessed of any property within this state shall die intestate leaving no heirs, such property shall escheat to, and the title thereto immediately vest in the state of Washington, *subject,* however, *to existing liens* thereon, the payments of decedent's debts, and the expenses of administration." (Italics ours.)

RCW 11.08.030. "Such estates shall be administered and settled in the same manner as other estates. If at the expiration of eighteen months after the issuance of letters of administration no heirs shall have appeared and established their claim thereto, the court having jurisdiction of such estate shall render a decree escheating all the property and effects of such decedent to the state of Washington."

RCW 11.08.040. "After any estate shall have been escheated as aforesaid, it shall be the duty of the administrator thereof, under the supervision and direction of the court, to sell all the personal property, such sales to be made in such manner and upon such terms and conditions as the court may deem to the best advantage to the estate. The proceeds of such personal property shall be first exhausted before any real property shall be subjected to the debts of decedent, expenses of administration, or the satisfaction of liens thereon."

■ The respondent's position is that the legislature intended the italicized portion of RCW 11.08.021 to apply only to private liens, and that when the state acquires title to

real property, accrued tax liens become merged in the title, citing *Halvorsen v. Pacific County*, 22 Wn. (2d) 532, 156 P. (2d) 907, 158 A. L. R. 555 (1945), *Reid v. State ex rel. Thompson*, 74 Ind. 252 (1881) and *Schmitz v. New Mexico State Tax Comm.*, 55 N. M. 320, 232 P. (2d) 986 (1951). We see no merit in this argument. No language in RCW 11.08.021 distinguishes between public and private liens and the respondent points to nothing which would suggest that the legislature intended anything but the ordinary meaning of the words used. We may not read into a statute language which does not appear when the statute is clear and unambiguous.

██ · We believe the question whether tax liens survive an escheat order was settled in the case of *In re Graley's Estate*, 183 Wash. 268, 48 P. (2d) 634 (1935). That case involved the distribution of the proceeds of the sale of real property remaining in the hands of an administrator after the entry of an order of escheat. The question was whether or not the administrator should pay taxes levied after the death of the intestate but before the entry of the escheat order. It was contended that the state acquired title at the time of the death of the intestate and, therefore, since no tax can be levied upon property owned by the state, no tax obligation existed. In answer to this we said:

" . . . the words 'immediately vest in the state of Washington,' as used in . . . [RCW 11.08.021], can only refer to the date of the escheat as declared by the order entered pursuant to . . . [RCW 11.08.030].

" . . .

" . . . the title of the state of Washington to the property . . . as declared by the decree of escheat, in so far as the general taxes . . . are concerned, dates from the entry of the decree, and does not relate back to the date of [the owner's] death, so as to defeat the county's lien for the taxes above referred to."

We further said:

"Here, we have conflicting claims presented by different branches of the state government—on the one hand, the claim of the county for general taxes; on the other, the claim of the supervisor on behalf of the common schools.

*Generally speaking, the claim of the state through a county for taxes is superior to other claims.* The county officials must make the levy to meet the estimated county expenses. They cannot allow for a sinking fund to take care of property which may later escape taxation, and taxes which are thereafter removed from the rolls necessarily create a deficiency, which later must be paid by other property. In this case, the county officials had no possible way of even guessing that the state would ever have any claim to the real property left by Mr. Graley. They could only proceed in an orderly manner to assess the same, as required by law."

By the express language of RCW 11.08.021 and by our construction thereof in the *Graley* case, it is now settled in this state that real-estate taxes, which are levied prior to the time title vests in the state by entry of an escheat order, survive the escheat of title to the state.

■ The respondent argues that admitting the tax liens survive, they could not be enforced against the state's interest by a foreclosure sale, citing *State v. Frost*, 25 Wash. 134, 64 Pac. 902 (1901), *Port of Seattle v. Yesler Estate*, 83 Wash. 166, 145 Pac. 209 (1915), *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991 (1909), *Halvorsen v. Pacific County*, 22 Wn. (2d) 532, 156 P. (2d) 907, 158 A. L. R. 555 (1945), *Wingard v. Pierce County*, 23 Wn. (2d) 296, 160 P. (2d) 1009 (1945), *City of Bellingham v. Whatcom County*, 40 Wn. (2d) 669, 245 P. (2d) 1016 (1952), *In re Seattle*, 43 Wn. (2d) 445, 261 P. (2d) 416 (1953). An examination of these cases will disclose that they do not involve the sale of property for the nonpayment of real-estate taxes as against the interest of the state where it has acquired title under our escheat statutes. On the other hand we held, in *Puyallup v. Lakin*, 45 Wash. 368, 88 Pac. 578 (1907), that property upon which a tax lien existed could be sold in foreclosure by the county even though it had been acquired subsequently by a municipality. We said:

"... If the property had a lien upon it when it was purchased by the municipality, the municipality like an individual would take the property subject to the lien. The collection of the tax might be an idle thing if all the assessment that was due on the property would go to the municipality, but such is not the case. A portion of the money

is due to the state, a portion to the county, and a portion to the school district, and such incorporations are entitled to their share of the money due."

The same reasoning should apply in the enforcement of tax liens against property of the state obtained under our escheat statutes. In preserving lien holders' rights under RCW 11.08.021, it must be presumed that the legislature intended that such lien holders have the means to enforce those rights. Pierce County, as a tax lien holder, was therefore entitled to maintain the statutory method of enforcing its lien claim against the state, *i.e.*, foreclosure and sale.

■ The respondent contends that this construction of RCW 11.08.021 would render it contrary to Art. IX, § 3, of our state constitution, which provides:

"The principal of the common school fund shall remain permanent and irreducible. The said fund shall be derived from the following named sources, to wit: . . . the proceeds of lands and other property which revert to the state by escheat and forfeiture. . . ."

In the instant case, the property passing into the common school fund was subject to the tax liens of Pierce County and its right of foreclosure. At the time the order of escheat was entered, no quantum of property rights which the state gained by the escheat order was lost by reason of the tax lien foreclosure action. Art. IX, § 3, *supra*, was therefore not violated.

■ The respondent further contends that foreclosure of the lien against the state would contravene the fourteenth amendment to our state constitution (Art. 7), which provides:

" . . .

" . . . Property of the United States and of the state, counties, school districts and other municipal corporations . . . shall be exempt from taxation. . . ."

Foreclosing a tax lien which existed prior to and which survived the state's acquisition by escheat does not constitute "taxation" within the meaning of this constitutional provision. The taxation of the property in this case occurred prior to its acquisition by the state. Foreclosure is the

statutory method of enforcing the lien placed upon the property by statute to secure payment of the tax. There was no contravention of this constitutional provision by the foreclosure action.

■ The respondent further argues that the trial court was without jurisdiction to foreclose the tax lien in 1928 as against the interest of the state because the state's immunity from suit extends to tax lien foreclosure actions. The appellant contends that by RCW 4.92.010, the legislature has waived the sovereign immunity over suits to foreclose liens upon real property. We agree with the appellant. RCW 4.92.010 provides:

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. . . . *Provided*, That actions for the enforcement or foreclosure of any lien upon, or to determine or quiet title to, any real property in which the state of Washington is a necessary or proper party defendant may be commenced and prosecuted to judgment against the state in the superior court of the county in which such real property is situated. . . ."

In actions against the state to determine or quiet title to real property, this court, citing RCW 4.92.010 as its only statutory authority, has allowed relief in *Lefevre v. Washington Monument & Cut Stone Co.*, 195 Wash. 537, 81 P. (2d) 819 (1938), and *State ex rel. Hamilton v. Cowlitz County*, 200 Wash. 632, 94 P. (2d) 505 (1939). It follows that where tax liens are preserved by statute against property escheated to the state, the legislature by RCW 4.92.010 has consented to the foreclosure of tax liens against the state's interest in such property.

■ The respondent finally argues that the trial court was without jurisdiction to foreclose the tax lien in 1928 as against the interest of the state because notice required by RCW 4.92.020 was not given. The statute provides:

"Service of summons and complaint in such actions *shall be served in the manner prescribed by law* upon the attorney general, or by leaving the same in his office with an assistant attorney general." (Italics ours.)

This statute is in the alternative. The manner prescribed by law for service of summons and complaint in tax lien foreclosure actions was set forth in Laws of 1925, Ex. Ses., chapter 130, § 117, p. 303 (thereafter amended and codified as RCW 84.64.050):

". . . notice and summons may be served or notice given exclusively by publication in one general notice, describing the property as the same is described on the tax rolls.· . . . The person or persons whose name or names appear on the treasurer's rolls as the owner or owners of said property shall be considered and treated as the owner or owners of said property for the purpose of this section . . . and all persons owning or claiming to own, or having or claiming to have an interest therein, are hereby required to take notice of said proceedings and of any and all steps thereunder. . . ."

In construing this statute in *Whatcom County v. Black*, 90 Wash. 280, 155 Pac. 1071 (1916), we said:

". . . The statute . . . [RCW 84.64.050], provides that, when tax liens are foreclosed by and in the name of the county, 'the summons may be served or notice given exclusively by publication in one general notice, describing the property as the same is described on the tax rolls.' That was done in this case, the statute being fully and literally complied with, and we have held that such service, the proceeding being purely one *in rem,* is sufficient. *Tacoma Gas & Elec. Light Co. v. Pauley,* 49 Wash. 562, 95 Pac. 1103; *Noble v. Aune,* 50 Wash. 73, 96 Pac. 688. No personal service of summons in the tax certificate foreclosure by the county is necessary where the statute providing for publication of summons is followed."

In the instant case, the statutory requirements of notice were satisfied, and therefore, the foreclosure action was valid against everyone including the state of Washington.

The judgment is reversed and the case remanded with directions that an order be entered quieting title in the appellant to the property in controversy in this case.

ALL CONCUR.