# G. S. NICHOLAS & COMPANY ET AL. *v.* UNITED STATES.

# ALEX. D. SHAW & COMPANY ET AL. *v.* UNITED STATES.

## CERTIORARI TO THE UNITED STATES COURT OF CUSTOMS APPEALS.

Nos. 62, 63.   Argued January 14, 1919.—Decided March 3, 1919.

The allowance of three pence and five pence per gallon made under 23 & 24 Vict., c. 129, and later acts of Parliament, on exportation of certain British spirits, if not a "bounty," is a "grant" within the meaning of Paragraph E of § 4 of the Tariff Act of 1913, providing for a countervailing duty whenever any country shall pay or bestow, directly or indirectly, any bounty or grant upon the exportation of any article or merchandise dutiable under the act.

Notwithstanding the facts that such allowances may be intended merely as compensation to distillers and rectifiers for costs due to British excise regulations and are not confined to cases of exportation, they are, as applied to exports, governmental payments—"grants"— made only upon exportation, which, by lessening the burden of British taxation, enable the spirits to be sold more cheaply here than at home,—the situation against which Paragraph E was intended to provide.  P. 37.   *United States* v. *Passavant,* 169 U. S. 16, followed.

7 Cust. App. Rep. 97, affirmed.

THE case is stated in the opinion.   For the decision of the Board of General Appraisers, see G. A. 7758, 29 T. D. 59.

*Mr. Albert H. Washburn* for petitioners in No. 62.

*Mr. W. P. Preble* for petitioners in No. 63.

*Mr. Assistant Attorney General Hanson* for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Writs of certiorari to review a judgment of the Court of Customs Appeals affirming a decision by the Board of General Appraisers which overruled the protests of petitioners against the action of collectors of customs at Boston and New York assessing additional or countervailing duties on whiskey and gin imported from Great Britain. 7 Cust. App. Rep. 97.

Paragraph E of § 4 of the Tariff Act of 1913 (38 Stat. 114) reads as follows:

"E. That whenever any country, dependency, colony, province, or other political subdivision of government shall pay or bestow, directly or indirectly, any bounty or grant upon the exportation of any article or merchandise from such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The net amount of all such bounties or grants shall be from time to time ascertained, determined, and declared by the Secretary of the Treasury, who shall make all needful regulations for the identification of such articles and merchandise and for the assessment and collection of such additional duties."

The question in the case is the legality of the counter-

vailing duty. It was determined and declared to be necessary under Paragraph E by reason of the allowance under the British legislation of three pence upon plain British spirits and five pence upon British compounded spirits. 23 & 24 Vict., c. 129.

The case is not of broad compass. The act of Parliament referred to above levies a duty upon every gallon of spirits of a certain strength which after certain designated dates were or should be distilled within the United Kingdom or which, having been distilled therein, were on the designated dates in the stock or possession of any distiller or in any duty-free warehouse, and which after the named dates should be taken out for consumption within the United Kingdom.

It is provided that "In consideration of the Loss and Hindrance caused by Excise Regulation in the Distillation and Rectification of Spirits in the United Kingdom" there shall be paid "to any Distiller or Proprietor of such Spirits on the Exportation thereof from a Duty-free Warehouse, or on depositing the same in a Customs Warehouse . . . the Allowance of Twopence per Gallon . . . and to any licensed Rectifier who . . . has or shall have deposited in a Customs Warehouse Spirits distilled and rectified in the United Kingdom the following Allowances; . . . . Threepence per Gallon, and on Spirits of the Nature of Spirits of Wine an Allowance of Twopence per Gallon . . .

Subsequent acts of Parliament repeat the provisions for allowance upon exported spirits, adding some details, and are replete with the regulations and provisions which the legislators thought or experience had demonstrated were necessary. And there is quite an enumeration of warehouses and their purposes which, however necessary from the standpoint of the law, happily is not necessary to our consideration of the questions in the case, although counsel describe them and use them in display of the options which

it is contended the law gives to a distiller—that is, to export, warehouse, or sell the spirits or use them under conditions which would or would not result in an allowance. We do not find it necessary to go into such confusing considerations. The question in the case is more direct, and is whether the three pence and five pence paid on account of export from the United Kingdom is the bestowal "directly or indirectly" of a "bounty or grant upon the exportation of any article or merchandise from such country," to use the words of Paragraph E.

Looking only at the paragraph and judging from the first impressions of its words, the problem presented would seem to be without difficulty. There is paid to an exporter of spirits from the United Kingdom the sum of three or five pence a gallon, as the case may be, and the instant conclusion is that the sale of spirits to other countries is relieved from a burden that their sale in the United Kingdom must bear. There is a benefit, therefore, in exportation, an inducement to seek the foreign market. And thus it would seem, if we regarded the substance of things, that the condition of the application of Paragraph E obtains.

Counsel, however, resist this view in somewhat lengthy and minute arguments, only the basic propositions of which we can give. They dwell especially upon the purpose of the British act and the differences, not only actual, as they contend, but recognized in the administrative and legislative parlance of this country, between the words allowance, bounty, drawback and grant. In support of the first contention—that is, the purpose of the British act—it is urged that the allowance provided for is not a "bounty" upon exportation, but "compensation" to the distiller and rectifier for costs due to excise restrictions. In other words, that the allowance is not a premium on exportation, but the remission or reimbursement of the expense of manufacture to accommodate the "pe-

culiar. conditions and necessities" of the British fiscal policy. In confirmation of this view it is said that not all British spirits when exported get the allowance, but only those that are warehoused in a certain specified way, and that, besides, the allowance is also paid when certain spirits go into domestic consumption. And the British Ambassador is quoted as saying of the allowances that they "do not even compensate the loss they are intended to reimburse, as is abundantly proved." .

It is hence asserted that the condition of the application of Paragraph E—that is, a premium bestowed on an exportation from another country—is absent and that, besides, the paragraph is of limited scope, the word bounty not being used in its most comprehensive sense, and that there is a wide difference between an "indirect bounty" and "indirectly paying a bounty," and that for an indirect bounty the paragraph does not provide. Counsel attempt to justify the distinction and illustrate it by the citation of the example of many acts of Congress by which "indirect" bounties were legislated and also by the comments of legislators in discussion of the purpose and effect of the use of the words "allowances," and "rebates," and "drawbacks." And *United States* v. *Passavant*, 169 U. S. 16, 23, is quoted for a distinction between "the word 'bounty' as differentiated from the word 'drawback' in tariff parlance" and the "shades of meaning which Congress must have had in mind in enacting Paragraph E and provisions *in pari materia*." In further support of their distinctions counsel cite the executive practice of this country, and adduce the decisions of this and other courts to show that such practice is a useful resolvent of the meaning of words and of legislative intention.

We appreciate the strength of the argument, but the circumstances are but aids to persuasion; they do not compel it. Every new statute is individual and presents its own problem. That before us does, and, as we have

said, looking at its words alone, has no uncertainty of purpose. Whenever any country "shall pay or bestow, directly or indirectly, any bounty or grant upon the exportation of any article or merchandise," there shall be levied and paid upon it, upon importation, in addition to the regular duty, an additional one "equal to the net amount of such bounty or grant, however the same be paid or bestowed." The statute was addressed to a condition and its words must be considered as intending to define it, and all of them—"grant" as well as "bounty"— must be given effect. If the word "bounty" has a limited sense the word "grant" has not. A word of broader significance than "grant" could not have been used. Like its synonyms "give" and "bestow," it expresses a concession, the conferring of something by one person upon another. And if the "something" be conferred by a country "upon the exportation of any article or merchandise" a countervailing duty is required by Paragraph E.

There can be, therefore, but one inquiry: Was something—bounty or grant—paid or bestowed upon the exportation of spirits? Counsel's answer we have given; ours is different. They dwell upon the meaning of one word and the necessary adjustments of the British revenue legislation; we regard all of the words, the fact of payment and the event—the fact that the grant is made at the time of exportation and only upon exportation (of course, we mean of the spirits destined for the United States)—the event, that the spirits may be sold cheaper in the United States than in the United Kingdom, and necessarily there may be that aid to their competitive power. We do not think that it is a repelling answer to say that they are sold here at the same price that they would be sold for in the United Kingdom if the latter imposed no tax, that is, sold here as if they had not been taxed at all, and therefore sold not below their natural cost. This is mere speculation of the effects of a different situation. We have the

fact of spirits able to be sold cheaper in the United States than in the place of their production, and this the result of an act of government because of the destination of the spirits being a foreign market. For that situation Paragraph E was intended to provide. What legislation some other situation might require or receive we are not called upon to conjecture.

Our conclusion is supported, we think, by *United States* v. *Passavant, supra,* a case from which counsel have adduced some argument. An importation of goods from Germany was the subject of the decision. That country imposed a tax upon merchandise when sold by the manufacturer thereof for consumption or sale in the markets of Germany. Upon exportation of the merchandise the tax was remitted. The remission was called "bonification of tax" as distinguished from being refunded as a rebate. The merchandise could be purchased in bond for exportation in the principal markets of Germany at the net invoice price and without paying the so-called German duty. The merchandise with which the case was concerned was so purchased.

Upon importation of the merchandise it was determined by the collector and customs appraiser that its value was the net invoice value with the German duty added. This ruling was contested by the importer and the Board of General Appraisers reversed it. The Circuit Court, to which the case had been carried, affirmed the decision of the Board of General Appraisers. Upon appeal to the Circuit Court of Appeals that court asked of this court whether the German duty had been lawfully included by the collector and customs appraiser in their estimate of the dutiable value. We answered in the affirmative, and said, through Mr. Chief Justice Fuller, that "the laws of this country in the assessment of duties proceed upon the market value in the exporting country and not upon that market value less such remission or ameliora-

tion as that country chooses to allow in accordance with its own views of public policy." And this conclusion was reached upon the effect of the remitted tax and not upon the word used to designate it. In other words, the decision was not determined by a consideration of costs of manufacture or their reimbursement nor by the requirements of the policies of the exporting country. It regarded the fact and effect of the remitted excise.

*Downs* v. *United States,* 187 U. S. 496, is a like example, and direct and indirect bounties are illustrated. As an instance of the former the amount paid upon the production of sugar under the Act of Congress of 1890 is adduced, and also the "drawback" (the word of the statute is used) upon certain articles exported; as instances of the latter, that is, of indirect bounties, the remission of taxes upon the exportation of articles which are subject to a tax when sold or consumed in the country of their production is given, and, as another example, the laws permitting distillers of spirits to export the same without payment of an internal revenue tax or other burden.

We consider further discussion unnecessary and the judgment of the Court of Customs Appeals is

*Affirmed.*